IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| § | |
| v.  § | CASE NUMBER 1:12-CR-32-2-MJT |
| § | |
| § | |
| SANTOS CONTRERAS § | |
| § | |

**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

Pending before the undersigned is a *pro se* Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A) (doc. #230) filed by the Defendant, Santos Contreras on May 4, 2020.[1] Contreras is currently serving a sentence for violations of 21 U.S.C. § 841(a)(1) (Possession with Intent to Distribute 5 Kilograms or more of Cocaine) and 18 U.S.C. § 924(c) (Possession of a Firearm in Relation to a Drug Trafficking Offense).  (Doc. #145.)  The United States filed a response to the Defendant's motion on November 22, 2021.  (Doc. #233.)  After reviewing all applicable facts and law, the undersigned recommends that the Defendant's motion be denied.

**I.     ISSUES PRESENTED**

The Defendant argues that he should receive compassionate release due to COVID-19, his completion of 9 plus years of his sentence, and his rehabilitation efforts while in prison.  (Doc. #230.)  The Government responds stating that the Defendant's medical issues do not rise to the level of extraordinary and compelling circumstances; he has refused the COVID vaccine; he is still a risk of danger to the community due to his history of violent criminal conduct; and he has only served roughly half of his sentence.  (Doc. #233.)

---

[1] This motion is referred to the undersigned United States magistrate judge for review, hearing if necessary, and submission of a report with recommended findings of fact and conclusions of law.  28 U.S.C. § 636(b)(1)(B); E.D. TEX. LOCAL R. CR-59(a); Doc. #245.

1

## II.     LEGAL STANDARD

Section 3582(c)(1)(A) "authorize[s] a sentence reduction where: (1) 'extraordinary and compelling reasons warrant such a reduction,' (2) 'such a reduction is consistent with applicable policy statements issued by the Sentencing Commission,' and (3) such a reduction is appropriate 'after considering the factors set forth in section 3553(a) to the extent that they are applicable.'" *United States v. Shkambi*, 993 F.3d 388, 389 (5th Cir. 2021) (quoting 18 U.S.C. § 3582(c)(1)(A)).

Before seeking relief from the court, a defendant must first submit a request to the facility's warden where he is housed to move for compassionate release on his behalf and then either exhaust his administrative remedies or wait 30 days from the warden's receipt of his request. 18 U.S.C. § 3582(c)(1)(A); *United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020). Here, the Government does not dispute that Contreras has met this requirement. Neither does this court.

Section 3582(c)(1)(A) does not define the "extraordinary and compelling reasons" that may merit compassionate release. The court therefore looks to the phrase's plain and ordinary meaning. "Extraordinary" means "'beyond or out of the common order,' 'remarkable,' and synonymous with 'singular.'" *United States v. Escajeda*, 58 F.4th 184, 188 (5th Cir. 2023) (quoting *Extraordinary*, Webster's New International Dictionary 903 (2d. ed. 1934; 1950)). "'Compelling' is a participle of 'compel,' which means 'to drive or urge with force, or irresistibly,' 'to force,' and 'to subjugate.'" *Id.* (quoting *Compel*, Webster's New International Dictionary, *supra*, at 544). Section 3582(c)(1)'s use of these terms together thus limits compassionate release to instances where prisoners "face some extraordinarily severe exigency, not foreseeable at the time of sentencing, and unique to the life of the prisoner." *Id.* (citing *Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020)); *see also United States v. Thompson*, 984 F.3d 431, 434 (5th Cir. 2021) (considering a condition that roughly 12% of Americans suffer from as "commonplace" and not "extraordinary").

The Sentencing Commission has the authority to "promulgate general policy statements … that describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." *United States v. Williams*, No. 3:18-CR-0291-B-2, 2021 WL 1865005, at *2 (N.D. Tex. May 10, 2021) (quoting *Shkambi*, 993 F.3d at 391). Prior to the passage of the First Step Act, the Sentencing Commission issued a policy statement, U.S.S.G. § 1B1.13, setting forth the circumstances that are considered "extraordinary and compelling reasons." *Id.* (citing *United States v. Muniz*, NO. 4:09-CR-0199-1, 2020 WL 1540325, at *1 (S.D. Tex. Mar. 30, 2020) (citing § 1B1.13(1)(A), cmt. n.1)). These include the defendant's medical condition, age, family situation, and "other reasons." *See* § 1B1.13(1)(A), cmt. n.1.4. But Section 1B1.13 only applies to motions filed by "the Director of the [BOP]" and does not bind district courts when addressing a prisoner's own motion. *See Shkambi*, 993 F.3d at 393 (citing § 1B1.13). Therefore, "there are no policy statements applicable to prisoners' compassionate-release motions." *United States v. Escajeda*, 58 F.4th at 188 (citing *Shkambi*, 993 F.3d at 392.) Nonetheless, Section 1B1.13 still informs courts as to what may constitute extraordinary and compelling reasons for compassionate release. *See Williams*, 2021 WL 1865005, at *2; *United States v. Contreras*, No. 4:18-CR-46(12), 2021 WL 1536504, at *4 (E.D. Tex. Apr. 19, 2021) (finding Section 1B1.13 informative in evaluating an inmate's motion post *Shkambi*).

### III. ANALYSIS

#### A. *Exhaustion of Administrative Remedies*

As stated above, a request for compassionate relief must first be presented to the BOP for consideration. After 30 days have passed or the defendant has exhausted all administrative rights to appeal the BOP's failure to move on his behalf, a defendant may ask a court for a sentence

3

reduction under section 3582(c)(1)(A). Here, the Government concedes that the Defendant made a request to the warden at the Federal Correctional Institution in Beaumont, Texas on July 4, 2021, and it has been more than 30 days since he submitted that request thereby satisfying his administrative exhaustion requirement. (Doc. #233, at 3.)

### B. *Extraordinary and Compelling*

#### 1. *Medical Conditions*

Extraordinary and compelling reasons exist regarding a defendant's medical condition when the defendant is "suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)" or when a defendant is "suffering from a serious physical or medical condition," "suffering from a serious functional or cognitive impairment," or "experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A). Courts that have granted compassionate release based on a prisoner's health problems "largely have done so for defendants who had already served the lion's share of their sentences and presented multiple, severe, health concerns." *Thompson*, 984 F.3d at 434–35. Thus, "compassionate release due to a medical condition is an extraordinary and rare event." *White v. United States*, 378 F. Supp. 3d 784, 787 (W.D. Mo. 2019). The Government believes that the Defendant has failed to meet this exacting standard. The court agrees.

#### i. *COVID-19*

"Fear of COVID doesn't automatically entitle a prisoner to release." *Thompson*, 984 F.3d at 435; *see also United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot

4

independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."). While Defendant's medical records indicate that he has high blood pressure (with undiagnosed hypertension) and an elevated body mass index, he does not have an illness that would render him more susceptible to COVID-19. He is fully ambulatory, engages in normal activities, and is assigned to a work detail. In his PSR, he stated that he has never suffered from any serious medical ailments and his overall health is good. (Doc. #126, at 9.) There is no indication that he cannot provide self-care within the facility.

In addition, the Defendant refused the COVID-19 vaccine. This hurts his case.[1] *See, e.g.*, *United States v. Baeza-Vargas*, No. CR-10-00448-010-PHX-JAT, 2021 WL 1250349, at *2–3 (D. Ariz. Apr. 5, 2021) ("Judges . . . have ruled with consistency that an inmate's denial of a COVID-19 vaccination weighs against a finding of extraordinary and compelling circumstances."); *United States v. Greenlaw*, No. 1:18-cr-00098-JAW-06, 2021 WL 1277958, at *7 (D. Me. Apr. 6, 2021) ("The risk-benefit analysis in favor of inoculation is so overwhelming that the court holds [defendant's] refusal to be vaccinated against his motion for compassionate release."); *United States v. Jackson*, No. 07-40-2, 2021 WL 1145903 (E.D. Pa. Mar. 25, 2021) (denying relief even though the defendant was 58 years old and suffered from, among other conditions, obesity, type II diabetes, hypothyroidism, hypertension, asthma, and high cholesterol, explaining: "[defendant] . . . elected not to be vaccinated. Thus it seems that [defendant] has voluntarily declined to 'provide

---

[1] The result would be no different were Defendant to accept the vaccine since the vaccine renders an inmate protected from the virus. *See United States v. Groom*, No. 2:17-cr-159, 2021 WL 1220225, at *2 (S.D. Ohio Apr. 1, 2021); *United States v. Grummer*, 519 F. Supp. 3d 760 (S.D. Cal. 2021) (denying compassionate release to a vaccinated defendant with several chronic medical conditions); *United States v. Wakefield*, No. 1:19-cr-00095-MR-WCM, 2021 WL 640690, at *3 (W.D.N.C. Feb. 18, 2021) (denying compassionate release to a defendant presenting with obesity, diabetes, and hypertension who received his first dose but had also previously tested positive); *United States v. Smith*, No. 17-CR-20753, 2021 WL 364636, at *2 (E.D. Mich. Feb. 3, 2021) ("[A]bsent some shift in the scientific consensus, Defendant's vaccination against COVID-19 precludes the argument that his susceptibility to the disease is 'extraordinary and compelling' for purposes of § 3582(c)(1)(A).").

self-care' and mitigate her risk of a severe COVID-19 infection"); *United States v. Austin*, No. 15-20609, 2021 WL 1137987, *2 (E.D. Mich. Mar. 25, 2021) ("Defendant cannot establish that his conditions are exceptional and demand immediate release when he intentionally prevents the BOP from mitigating dangers to his health and safety."). Furthermore, the fact that Defendant's facility is inoculating residents supports the conclusion that the BOP is taking adequate precautions to protect the Defendant. *See United States v. Lipscomb*, No. 2:18-cr-34-SPC-NPM, 2021 WL 734519, at *2 (M.D. Fla. Feb. 25, 2021).

In addition to vaccinations, the BOP is reducing the spread of the virus through a comprehensive approach that implements quarantining, social distancing, masks, limiting visitors, and transferring qualified inmates to home confinement. (Doc. #233.) The BOP's "action plan" is accessible in full at www.bop.gov/coronavirus/. Accordingly, the court finds that the Defendant does not present extraordinary and compelling reasons for release predicated on COVID-19.

### ii. Other Medical Conditions

Defendant's health concerns are not extraordinary and compelling, on their own or taken together with COVID-19. As noted by the Government, the Defendant's health concerns are not serious and are well-managed with medication. Although he is noted as overweight, his condition is neither terminal nor does it substantially diminish his ability to provide self-care in the institutional setting. *See Thompson*, 984 F.3d at 433. Furthermore, due to its prevalence, obesity or being overweight cannot be deemed "extraordinary" for compassionate release. *See United States v. Harmon*, 834 F. App'x 101, 101 (5th Cir. 2021) (affirming denial of compassionate release to a 52-year-old woman who was obese); *United States v. Grant*, No. 16-00172-01, 2021 WL 149308, at *4 (W.D. La. January 15, 2021) ("[W]hile obesity is an underlying medical condition that poses increased risk of severe illness from COVID-19, courts have found that

6

obesity—alone or even paired with other medical conditions—does not provide adequate grounds for compassionate release."); *United States v. Gordon*, No. 15-20609, 2020 WL 3971013, at *3 (E.D. Mich. July 14, 2020) (denying compassionate release of an obese defendant, reasoning that because "42.4% of American adults are obese and [an] additional 32% are overweight," obesity "is not a condition so [extraordinary] that injustice would result if the relief is not granted").

### 2. Family Circumstances

"Family circumstances" are extraordinary and compelling circumstances *only* if they involve: "(i) the death or incapacitation of the caregiver of the defendant's minor child or minor children;" and "(ii) the incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." U.S.S.G. § 1B1.13, cmt. n.1(C).  The Defendant has not alleged any of these circumstances.

### 3. Other Reasons—Change in the Law

The Defendant also alleges that he should be granted compassionate release because if he were sentenced today, he would receive a lower sentence due to changes in the law.  He was detained on May 16, 2012 and stayed in custody pending his sentencing, so he has now served more than 11 years in prison. (Doc. #126.) The Government argues that this change in the law is not an extraordinary and compelling reason for his compassionate release, and would instead be an end run around Congress' intent that the relief it provides is not retroactive and only applies to those defendants who had not been sentenced as of December 21, 2018.  (Doc. #233.)  The Government relies on the Sixth Circuit case of *United States v. Tomes*, 990 F.3d 500, 505 (6th Cir. 2021) for this premise.

Since the Government's brief filing, the Fifth Circuit very recently ruled on this issue and found that "a prisoner may not leverage non-retroactive changes in criminal law to support a

compassionate release motion." *McMaryion v. United States*, 64 F.4th 257, 259-260 (5th Cir. 2023); *but see United States v. Cooper*, 996 F.3d 283, 286, 289 (5th Cir. 2021) (instructing the district court to consider on remand whether "the nonretroactive sentencing changes to his § 924(c) convictions, either alone or in conjunction with any other applicable considerations, constitute extraordinary and compelling reasons for a reduction in sentence"). On April 7, 2023, the Fifth Circuit again rejected a prisoner's argument that non-retroactive sentencing changes made by the First Step Act can support a compassionate release motion. *See United States v. Cisneros*, No. 21-40860, 2023 WL 2823903, at *1 (5th Cir. Apr. 7, 2023). Therefore, the Defendant's argument to apply changes in the law fails.[2]

Even if the court were to consider the changes in the law alleged by the Defendant, his argument is without merit. The Defendant's argument to apply the *Dean* case was previously denied in the Defendant's § 2255 civil case. Also, his argument regarding the *Alleyne* and *Archer* cases are not applicable here. In *Alleyene*, the court held that facts that increase mandatory minimum sentences must be submitted to the jury, such as "brandishing" a firearm under section 924(c) where the minimum is increased from five to seven years of imprisonment. *Alleyne v.*

---

[2] Contrary to the Fifth Circuit's holding, the United States Sentencing Commission published "Amendments to the Sentencing Guidelines" on April 27, 2023, with an effective date of November 1, 2023, which will modify policy statement U.S.S.G. § 1B1.13. As mentioned above, this policy statement is not binding on courts, but courts routinely use it as guidance in determining whether a reduction in a term of imprisonment should be made pursuant to 18 U.S.C. 3582(c)(1)(A). Among other things, the amendment adds a section to U.S.S.G. § 1B1.13 for consideration of "unusually long sentences" as an extraordinary and compelling reason. See AMENDMENT TO THE SENTENCING GUIDELINES, United States Sentencing Commission, available at https://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/202305_RF.pdf, at p. 5-11 (April 27, 2023). This new subsection (b)(6) "permits non-retroactive changes in law (other than non-retroactive amendments to the Guidelines Manual) to be considered as extraordinary and compelling reasons warranting a sentence reduction, but only in narrowly circumscribed circumstances. Specifically, where (a) the defendant is serving an unusually long sentence; (b) the defendant has served at least ten years of the sentence; and (c) an intervening change in the law has produced a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, the change in law can qualify as an extraordinary and compelling reason after the court has fully considered the defendant's individualized circumstances." The Commission made this amendment to specifically respond to the circuit court split on this issue; however, this amendment is not yet in effect. Moreover, the Defendant does not meet its requirements as he is not serving an unusually long sentence and there is not a gross disparity between the sentence he is serving and a sentence likely to be imposed at the time he filed his motion.

*United States*, 570 U.S. 99, 116 (2013). However, here, the Defendant was only given the minimum of five years for possession, which was found by the jury. In addition, the jury was given instructions on the definition of possession. (Doc. #100.) There was no increase for brandishing or discharging the firearm. In *Archer*, a Second Circuit case, the court held that in order to sustain quantity-based enhancements for relevant conduct, the court must base its findings on "specific evidence" that the offense involved the requisite quantity of items. *United States v. Archer*, 671 F.3d 149, 162 (2d Cir. 2011). Here, the jury found that the Defendant possessed at least 5 kilograms of cocaine. (Doc. # 100, #104.) The Government put on specific evidence that there were 9.9 kilograms of cocaine found in the vehicle, so the Defendant was subject to an offense level of 32 for having at least 5 kilograms but less than 15 kilograms of cocaine. (Doc. #98, #126, at 5.) Consequently, evidence of a specific quantity was found.

### C. Sentencing Factors

Notwithstanding all previous analysis, compassionate release should be denied because this court must consider all pertinent circumstances, including the Section 3553(a) factors and possible danger to the community. *See United States v. Doe*, 833 F. App'x 366 (3d Cir. 2020) (affirming the denial of compassionate release when the defendant presented medical risk, holding that the district court did not abuse its discretion in considering the nature of the offense, the defendant's history, and the status of the virus at the facility); *United States v. Bullock*, 833 F. App'x 934 (3d Cir. 2021) (determining that the district court did not abuse its discretion in denying relief for medically vulnerable inmate upon considering the Section 3553(a) factors, including the substantial time remaining to be served, criminal history, and institutional infractions).

Compassionate release is not merited here after considering the applicable factors set forth in Section 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a)

factors before granting compassionate release); *United States v. Chambliss*, 948 F.3d 691, 693–94 (5th Cir. 2020). Even when a prisoner has demonstrated an extraordinary and compelling reason under the compassionate-release statute, relief may still "be refused after weighing the sentencing factors of 18 U.S.C. § 3553(a)." *Chambliss*, 948 F.3d at 693; *United States v. Ruffin*, 978 F.3d 1000, 1008 (6th Cir. 2020) ("We have repeatedly recognized that district courts may deny relief under the § 3553(a) factors even if 'extraordinary and compelling' reasons would otherwise justify relief.").

### 1. *Denying compassionate release will promote just punishment and respect for the law.*

First, granting this motion would fail to provide just punishment for his offense and promote respect for the law. Courts that have granted compassionate release "largely have done so for defendants who had already served the lion's share of their sentences and presented multiple, severe, health concerns." *Thompson*, 984 F.3d at 434–35. For example, in *Chambliss*, while the defendant's terminal illness "constitut[ed] 'an extraordinary and compelling reason for a sentence reduction' and he '[did] not present a danger upon release,'" the court denied compassionate release because "releasing [defendant] after serving only 14 years of a 30-year sentence minimizes both the impact of [defendant's] crime and seriousness of the offense." 948 F.3d at 693–94. Here, the Defendant began his sentence in 2012 and has served a little over half of this sentence. His projected release date is April 30, 2025, as calculated by the BOP. *See* https://www.bop.gov/inmateloc/ (last visited Oct. 12, 2023). Considering the nature of his offense, the court finds that denying compassionate release "would 'provide just punishment for the offense' and 'afford adequate deterrence to criminal conduct.'" *Chambliss*, 948 F.3d at 693–94.

### 2. *The court cannot conclude that Defendant does not pose a danger to the community.*

This court must deny a sentence reduction unless it determines that the defendant "is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). "The best predictor of how [a defendant] will behave if he were to be released is how he behaved in the past." *United States v. Preston*, No. 3:18-CR-307-K, 2020 WL 1819888, at *4 (N.D. Tex. Apr. 11, 2020) (quoting *United States v. Martin*, 447 F. Supp. 3d 399, 403 (D. Md. 2020)). In this spirit, the Government argues that the Defendant continues to present a danger to the community and should be required to serve the sentence that this court imposed for his criminal conduct. (Doc. #233.) The court agrees.

The Defendant is 36 years old and is serving a sentence for possession with intent to distribute cocaine and possession of a firearm during and in relation to a drug trafficking crime. The Defendant and a co-defendant traveled from Houston to Chicago to deliver almost ten kilograms of cocaine in exchange for $320,000.00 and return to Houston with the money. (Doc. #126, at 3-4.) While passing through Beaumont, officers pulled over the vehicle wherein the Defendant was a passenger for a traffic violation, searched the vehicle, and found the cocaine and a firearm. (*Id.* at 4.) The Defendant's role was as a mule. (*Id.* at 5.) He received a sentence of 211 months, which was later reduced to 181 months. (Doc. #222). The Defendant's criminal history includes physical and sexual assault of a family member, a probation revocation, and a DWI. (Doc. #126.)

During his present period of incarceration, the Defendant has made rehabilitation efforts, including classes, learning a trade, and by engaging in good behavior, etc. The court praises Defendant and his efforts. However, while the court may consider rehabilitation efforts, rehabilitation "is not, by itself, an extraordinary and compelling reason for purposes of this policy

11

statement." U.S.S.G. § 1B1.13 cmt. n.3; *see United States v. Brooker*, 976 F.3d 228, 237–38 (2d Cir. 2020) (holding that there is a "statutory limit on what a court may consider to be extraordinary and compelling . . . [and] '[r]ehabilitation . . . alone shall not be considered an extraordinary and compelling reason.'" (quoting 28 U.S.C. § 994(t))); *United States v. Hudec*, No. CR 4:91-1-1, 2020 WL 4925675, at *5 (S.D. Tex. Aug. 19, 2020) ("While the Court is permitted to consider post-sentencing rehabilitation in determining whether to grant an eligible defendant a sentence reduction, it is not authorized to grant a reduction based upon post-sentencing rehabilitation alone.").

Therefore, the nature of the Defendant's original offense, criminal history, and all other applicable factors fail to persuade the court that the Defendant does not pose a danger to the community. *See* 18 U.S.C. § 3553(a)(1), (2). Accordingly, this court must deny the Defendant's motion after considering the Section 3553 factors.

## IV. RECOMMENDATION

"[C]ompassionate release is discretionary, not mandatory." *Chambliss*, 948 F.3d at 693. In exercising its discretion, the court finds that no extraordinary and compelling reasons exist. Having determined that extraordinary and compelling reasons justifying release are not present and considering all other applicable factors, the undersigned recommends that the court DENY the Defendant's motion for compassionate release be denied.

## V. OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(C), each party to this action has the right to file objections to this Report and Recommendation. Objections to this Report must (1) be in writing, (2) specifically identify those findings or recommendations to which the party objects, (3) be served and filed within fourteen (14) days after being served with a copy of this Report, and (4) be

no more than eight (8) pages in length. *See* 28 U.S.C. § 636(b)(1)(C); FED. R. CRIM. P. 59(b)(2); E.D. TEX. LOCAL R. CR-59(c). A party who objects to this Report is entitled to a *de novo* determination by the United States district judge of those proposed findings and recommendations to which a specific objection is timely made. 28 U.S.C. § 636(b)(1)(C); FED. R. CRIM. P. 59(b)(3).

A party's failure to file specific, written objections to the proposed findings of fact and conclusions of law contained in this report, within fourteen (14) days of being served with a copy of this report, bars that party from: (1) entitlement to *de novo* review by the United States district judge of the findings of fact and conclusions of law, *see Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988), and (2) appellate review, except on grounds of plain error, of any such findings of fact and conclusions of law accepted by the United States district judge, *see Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

**SIGNED this the 17th day of October, 2023.**

_____
Christine L Stetson
UNITED STATES MAGISTRATE JUDGE